Barney FEAGIN, Jr. and Donald R. Feagin, as individuals and in their Trust Capacities, Plaintiffs in Error,

v.

Raymond DAVIDSON and Beryl Rosemary Davidson and Frankfort Oil Company, a Division of Joseph E. Seagram & Sons, Inc., an Indiana Corporation, Defendants in Error.

No. 40900.

Supreme Court of Oklahoma.

Jan. 6, 1967.

Supplemental Opinion on Rehearing June 20, 1967.

W. F. Semple, Tulsa, for plaintiffs in error.

Russell & Russell, Wilburton, for Raymond Davidson and Beryl Rosemary Davidson.

Eldon E. Scott, Dallas, Tex., Fischl, Culp & McMillin, Ardmore, for Texas Pacific Oil Co., formerly Frankfort Oil Co., a division of Joseph E. Seagram & Sons, Inc., an Indiana Corp., defendants in error.

BERRY, Justice:

Plaintiffs in error brought this action seeking to quiet title to the mineral interest in a certain described 40 acres in Latimer County. The trial court found the issues in favor of the defendants.

To bring the problem into better perspective requires amplification of the factual background which provided ground for this appeal.

· The land involved originally was allotted to Selaney Stallaby, Choctaw Roll No. 8756, who died July 31, 1914, survived by her husband, Edward Hicker, and three minor children. The husband died intestate later in 1914, and one minor child died in 1916. All interest in the land thereby devolved to the surviving minor sister and brother, Daisy and Grover Hicker, who were placed under guardianship of one Cutler by the County Court of Latimer County. On March 23, 1922, her eighteenth birthday, Daisy executed a deed purportedly conveying her half interest to one Zula Graham. Contemporaneously the guardian instituted a partition action in Murray County, Oklahoma, and on September 28, 1922, a sheriff's deed was executed, in accordance with such partition proceeding, purportedly conveying Grover's half interest to Zula Graham. This grantee, joined by her husband who had acted in concert with the guardian in these transactions, executed a quit claim deed conveying the property to Grover Hicker, which was recorded December 16, 1922. This same date the Grahams executed a deed conveying the minerals to N. B. Feagin, father and predecessor in title of plaintiffs in the present appeal.

On July 12, 1928, both Daisy and Grover executed warranty deeds to this property to Stephens and McKissack, and on July 13th these deeds were approved in a proceeding before the county court, both grantors testifying in support of the petition for approval of the conveyances. These grantees executed an oil and gas lease covering the property in 1936, and on March 20, 1948, were joined by their wives in executing full warranty deeds conveying the property to Q. T. and Edith Sirpless.

On April 7, 1948, the Sirpless's filed suit to quiet title, alleging open, exclusive and continuous possession, naming as defendants Graham, N. B. Feagin, the Oklahoma Tax Commission, S. J. Cochran, whose interest arose under early oil and gas leases, and George S. Cochran, Trustee, under such interest, and Mid-Western Oil and Gas Company, a corporation, which had taken oil and gas leases from both the Cochran's and N. B. Feagin. This petition to quiet title alleged lack of judicial determination of heirs at law of the original allottee (Stallaby), that the various instruments mentioned above created a cloud upon their title, and prayed judgment determining the heirs of individuals in such chain of title who were found to be deceased, and quieting and confirming their (Sirpless) title and possession of the property as against the named defendants, their heirs, assigns or successors, or any persons claiming interest in this property by or under any of those named. The petition was verified by the Sirpless's attorney.

The attorney filed an affidavit to obtain publication service, stating the action to quiet title was of the class of cases in which publication service could be had, and then alleged: (quoting in pertinent part)

"Affiant further states that with due diligence upon the part of himself and the Plaintiffs, that he has been unable to ascertain whether or not the Defendants, Zula Graham and N. B. Feagin are living or are deceased, and if deceased, the names, identities, places of residence, or whereabouts of any of their heirs, executors, administrators, devisees, trustees, receivers, or assigns, immediate or remote, * * * and by reason of these facts the Plaintiffs are unable to obtain service by summons upon any of the above named Defendants within the State of Oklahoma."

· The case was heard June 9, 1948, at which time the trial court found all named defendants to be in default, except the

State of Oklahoma and George Cochran, only known heir of S. J. Cochran, both of whom filed general appearance and disclaimer of any interest in this property. The court further found:

"* * * this cause is one in which service by publication is authorized by the statute * * *; this court * * * finds that service by publication has been had * * * upon said defendants, Zula Graham, N. B. Feagin, the unknown heirs, executors, administrators, devisees, trustees and assigns, immediate and remote, of either or both parties who are or may be deceased, * * *."

The court then found the notice for publication and proof thereof regular and legally sufficient and approved service by publication upon the defendants, found same sufficient to vest the court with jurisdiction to render judgment and found each defendant in default, and adjudged the allegations of the petition to be taken as confessed against each defendant.

The trial court then adjudged and decreed that the different deeds and instruments under which the various defendants asserted interest in the property were null and void, and enjoined defendants from claiming any right, title or interest in the property adverse to plaintiffs' title and possession.

In April 1955, Sirpless et ux. executed a 10 year oil and gas lease to one Hamilton, which interest passed to Frankfort Oil Company by mesne assignments. The following October Sirpless et ux. conveyed the fee simple title to the Davidsons by warranty deed.

In February, 1962, the Feagins executed individual leases to each other, and in August, 1962, filed suit, in their individual and trust capacities seeking to quiet title to the minerals as against claims of the defendants. Their petition deraigned title from the allottee as set out above, and asserted that the title to the mineral rights passed to N. B. Feagin from Zula Graham, who had acquired valid deeds from Daisy Hicker, and the sheriff's deed in the partition proceedings of Grover Hicker's interest. The petition denied that defendants Davidson acquired any mineral interest under their deed, or that the corporate defendant secured any mineral interest under the Sirpless lease to Hamilton, eventually assigned to defendant.

The defendants filed separate answers and cross-petitions which alleged the same defenses and claims in that: (1) the mineral deed under which plaintiffs claim title was void because the deed from Daisy Hicker to Graham was a forgery, and the sheriff's deed in the purported partition proceeding was void for lack of jurisdiction in the Murray County District Court; neither the Grahams nor N. B. Feagin ever were in possession of the land; the deeds through which plaintiffs deraigned title all were executed as part of a fraudulent conspiracy appearing on the face of the record, and no consideration was paid therefor; (2) defendants and their predecessors in title had held actual, open, continuous, uninterrupted and hostile possession for more than thirty years, paid taxes and claimed ownership of both surface and minerals; (3) the judgment entered in 1948 quieting Sirpless's title was res judicata as to all issues asserted by plaintiffs, and estopped plaintiffs' right to bring this action; any claim of plaintiffs long since had been barred by laches and the statutes of limitation.

By cross-petition defendants alleged ownership of fee title, subject to a valid oil and gas lease which had vested in the corporate defendant by mesne assignments, and defendants' rights in the land and minerals were superior to any claim of plaintiffs, whereby defendants were entitled to judgment quieting their own title and the instruments upon which plaintiffs based their claim should be cancelled as a cloud upon defendants' title.

Plaintiffs replied by general denial, and specially denied the deed from Daisy Hicker to Graham was a forgery or lacked consideration, but alleged that if a forgery, N. B. Feagin was a purchaser in good faith

and for value without notice of fraud; if fraud inhered in the transaction the defense of fraud in any form was barred under 12 O.S.1961, § 93(3) (4). For answer to defendants' cross-petition the plaintiffs for the first time alleged the quiet title judgment of 1948 was void and constituted no bar to plaintiffs' action.

Upon hearing the trial court found all the issues in favor of defendants and entered judgment decreeing defendants to be owners in fee simple and entitled to possession of the land and minerals involved, subject only to the valid and outstanding lease of the corporate defendant, title to which was quieted against any claims by plaintiffs or any party claiming under them, who were enjoined from asserting any claim or interest in the land or minerals.

The premise that the judgment rendered in the Sirpless quiet title action was void, and requires reversal of the judgment in this appeal, is based upon assertedly fatal defects appearing upon the face of the judgment roll. The first contention is that the affidavit for publication service was fatally defective because: (1) it failed to state the action involved was a case arising under 12 O.S.1961, § 170; and (2) of failure to allege N. B. Feagin was a non-resident, or could not be served in the state.

■ The first ground of complaint is without merit. The affidavit plainly stated the action was to quiet title, one of the class of cases in which the statutes authorize service by publication. The second charges failure of the affidavit to set forth that Feagin was a non-resident, or that he could not be served within the state. The language of the affidavit, in pertinent part, is set out above.

■ It is argued such affidavit made no definite statement as to non-residence or inability to obtain service in the state, but simply relied upon the matters quoted for the conclusion that, because of such facts Feagin could not be served within this state. Plaintiffs cite and quote from a number of our decisions which involved

the verity of publication service, and conclude the publication affidavit was fatally defective for failure to meet the requirements prescribed in Davis v. Rowland, 206 Okl. 257, 242 P.2d 716, and Faulkner v. Kirkes, Okl., 276 P.2d 264.

The plain language of the statute (§ 170) provides for publication service, in those causes enumerated:

"Service may be had by publication in any of the following cases: * * * or where it is stated either in a petition or pleading, verified by the plaintiff or his attorney filed in said case, or in a separate affidavit, made by the plaintiff or his attorney for service by publication and filed therein that with due diligence service of summons cannot be made upon such defendant or defendants within the State; * * *."

No service by publication was sought upon the ground of non-residence. The right to statutory constructive service was predicated upon inability to ascertain by exercise of due diligence, whether Graham or Feagin were living, and if deceased the names of those parties composing any of the classes enumerated by the statute as successors in interest.

The decision in Rowland, supra, recognizes the difference between publication service involved in tax deed proceedings and where such service is the basis of a court action involving direct attack upon a judgment, as stated in Smith v. Head, 192 Okl. 216, 134 P.2d 973, 975. In discussing the distinction, we said (242 P.2d p. 719):

" * * * Therein the case of Pettis v. Johnston, supra, was cited to the effect that if, in an action in a court, the journal entry 'recites that affidavit and proof of publication has been examined and approved by the court, there is in effect an adjudication that there has been compliance with the statute and the judgment is valid unless the judgment roll affirmatively negatives the effect of the recital.' In the case of Ritchie v. Keeney, 181 Okl. 207, 73 P.2d 397, 400,

'an examination of the affidavit to obtain service by publication discloses that the positive statement is made therein that service of summons could not with due diligence be made upon the defendant Ritchie within the State of Oklahoma.' "

However, plaintiffs insist that because of failure of the affidavit to declare Feagin was a non-resident, or could not be served in the state, the rule in Rowland controls and the judgment was void because there was no evidence of any active effort to obtain personal service. Plaintiffs insist the affidavit failed to disclose active diligence to serve Graham and Feagin in the state, hence the judgment attacked is void on its face.

■ This same argument was made in Weimer v. Augustana Pension and Aid Fund, 179 Okl. 572, 67 P.2d 436, and Washburn v. Culbertson, 181 Okl. 476, 75 P.2d 190. In the latter case several authorities are cited, and after pointing to the nature and office of related statutory provisions governing publication service (12 O.S.1961, §§ 171, 173, 174), the opinion states at page 193 of 75 P.2d:

"There is no substantial difference between a law which requires the court to examine and approve the affidavit before granting the order for publication, and one which requires such examination, together with examination of the proof of publication, and approval of all before entering a judgment by default.

"This court has often held that where the journal entry of judgment recites as it did in the Williams judgment that the court has 'examined the affidavit for service by publication, notice by publication and proof of publication,' and finds the same legal and regular in all respects, and approves the same, the judgment based thereon is not void on the face of the judgment roll. This is true though there may be irregularities which would justify an order quashing the service if timely applied for."

Also see Jupe v. Home Owners Loan Corp. et al., 196 Okl. 588, 167 P.2d 46. There the basis for the alleged error was evidence aliunde the record reflecting the defendant was a resident of Oklahoma and with proper diligence might have been personally served, which fact was or should have been known to the plaintiff. In that case we stated that an affidavit and notice for publication service, unchallenged by evidence dehors the record, satisfied the requirements of section 170 and made a judgment rendered thereon valid according to the judgment roll.

■ Plaintiffs next contend the publication notice in the Sirpless quiet title action was void. The complaint is that proof of publication discloses publication on April 8, 1948—April 15, 1948, and April 22, 1948, which amounted to only 14 days publication rather than the 21 days required by 12 O.S.1961, § 173. Plaintiffs interpretation of the meaning of the statute, supra, is that the required three consecutive weeks makes publication for 21 days mandatory, and publication for a lesser period constitutes a defect apparent on the face of the judgment roll, which renders such judgment void.

The authority cited to support this argument appears in Smith v. Bostaph, 103 Okl. 258, 229 P. 1039, and Zipperle v. Smith, Gdn., Okl., 304 P.2d 310. Both decisions involved tax lien proceedings. In the Zipperle case, it is pointed out that the statutory requirement for three consecutive weeks publication also requires that the answer date specified must not be less than forty-one days from the first publication date. In that case we cited Aggers v. Bridges, 31 Okl. 617, 122 P. 170, a publication made first in a weekly newspaper on November 20th and the last publication being on December 8th, as being for three consecutive weeks, although judgment was reversed because the answer date was less than 41 days.

The answer date set by the publication notice in the Sirpless action was forty-three days after the first publication. The no-

tice by publication was in compliance with the statute and did not constitute a defect which rendered the judgment void on the face of the judgment roll.

■ Our conclusions relative to the matters discussed obviate need for discussing other arguments concerning plaintiffs' claim of lack of diligence which inhered in failure to secure personal service in the quiet title action, and argument to the effect that no statute of limitations bars the present action. In Bowling v. Merry, 91 Okl. 176, 217 P. 404, the settled rule is stated in syllabus 10:

"Unless the record affirmatively shows want of jurisdiction, and every fact not negatived by the record is presumed in support of the judgment of a court of general jurisdiction, and where the record of the court is silent upon the subject, it must be presumed in support of the proceedings that the court inquired into and found the existence of facts authorizing it to render the judgment which it did."

Judgment affirmed.

WILLIAMS, BLACKBIRD, IRWIN, HODGES and LAVENDER, JJ., concur.

HALLEY, C. J., and DAVISON, J., dissent.

SUPPLEMENTAL OPINION ON RE-HEARING

LAVENDER, Justice.

Plaintiffs in error in their petition for rehearing urge that the original opinion failed to consider another ground urged by them for finding the affidavit for service by publication in Sirpless v. Graham, No. 5524, void on the face of the record; said additional ground being that said affidavit was executed by the attorney for the plaintiff and stated that he (rather than the plaintiff) did not know and with due diligence was unable to ascertain the whereabouts, etc. of the defendants.

■ Plaintiffs in error argue that under our previous holdings in Faulkner v. Kirkes, Okl., 276 P.2d 264, 47 A.L.R.2d 418, and Seigle v. Richardson, Okl., 317 P.2d 767, such an affidavit is void on its face and reflects a lack of jurisdiction over the defendants thereafter notified by publication. Defendants in error in their response to the petition for rehearing call our attention to the provisions of 12 O.S. 1961, §§ 177.1 and 177.2, which, we are told, have the effect of curing just such a "defect" as here presented.

In Armstrong et ux. v. Sewer Improvement Dist. No. 1, Tulsa County, et al., 201 Okl. 531, 199 P.2d 1012, 207 P.2d 917, we held valid a curative statute which authorized publication of a notice containing the substance of a petition for the creating of a sewer district (rather than requiring the publication of the petition proper, as the statute had previously required). We referred to Chicago R. I. & P. R. Co. v. Austin, 63 Okl. 169, 163 P. 517, L.R.A.1917D, 666.

"In consideration of legislation of this character the important question to be considered in determining its validity and effect is to ascertain whether the acts which it attempted to validate would be effectual for the purposes intended if a valid law enacted prior to the doing thereof had directed that they be done as they were done. In such cases the authority of the Legislature to validate them thereafter is well established, and rights predicated upon such curable defects are not deemed meritorious nor entitled to the protection ordinarily accorded to vested rights."

We agree with defendants in error in their interpretation of the cited statute. We hold that the defect in the affidavit arising from the failure of the affiant to state that the plaintiff "knew" certain things and had "exercised" diligence, etc., was a curable defect within the above rule.

It does not appear that any action was brought by plaintiffs in error challenging the validity of the service obtained in the

Sirpless case within the limitation period prescribed by § 177.2 of the cited statute by reason whereof they are barred from now asserting such defects.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.

DAVISON and McINERNEY, JJ., dissent.