**J. Curtis MARTIN, Plaintiff in Error,**

**v.**

**Lula May Coats BASTION, Defend-
ant in Error.**

**No. 41416.**

Supreme Court of Oklahoma.

Jan. 31, 1967.

Ernest R. Brown, Pryor, for plaintiff in error.

Wm. M. Thomas, Jr., Harve N. Langley, Pryor, for defendant in error.

PER CURIAM:

This is an appeal by J. Curtis Martin, herein referred to as respondent, from a judgment in favor of Lula May Coats Bastion, herein referred to as complainant, in which it was adjudged that a certificate tax deed held by respondent on 10 acres of land in Mayes County was invalid, and vacating and setting aside such deed.

This controversy arose out of an action commenced by the Grand River Dam Authority to condemn the 10 acres of land involved herein for the purpose of impounding waters for power and flood control purposes in connection with the Markham Ferry Dam. The Petition for Condemnation was filed in the District Court of Mayes County, Oklahoma, on the 24th day of July, 1963, and lists James Curtis Martin (respondent) as owner, but lists Lula May Coats, now Bastion, (complainant) and Everett Bastion (her husband) as claiming some right, title and interest in and to:

> The Southeast Quarter of the Northeast Quarter of the Northeast Quarter (SE/4 NE/4 NE/4) of Section Nine (9), Township Twenty-two (22) North, Range Twenty (20) East, Mayes County, State of Oklahoma.

An affidavit to obtain service by publication on complainant and her husband was filed on the 24th day of July, 1963, listing the address of Lula May Coats, now Bastion, and Everett Bastion as 22840 S.W. Frances, Beaverton, Oregon. Service by publication of notice and mailing was completed upon said persons. The condemnation action has been concluded and the controversy between the instant parties concerns which party will get the money awarded for the taking of the 10 acres. The

only question involved is the validity of the certificate tax deed.

In her petition filed in the condemnation proceedings on September 30, 1963, the complainant alleged that the property was part of the allotment of Lula May Coats, (now Bastion) allotted to her by the Cherokee Nation as part of her share of lands of said Nation, and conveyed to her by patent dated August 2, 1912, and of record in Book 102 at Page 36 in the Mayes County Clerk's office; that the respondent, J. Curtis Martin, obtained a tax title to the property on April 2, 1962, but that no notice was given to complainant of the application for the tax deed, and respondent and his attorney knew the mailing address of complainant owner of the land, and, could have obtained her address to notify complainant of the application for tax deed with reasonable investigation and that they, the respondent and his attorney, did exercise no diligence in the endeavor to notify complainant of said application for deed, which amounts to constructive fraud in obtaining said deed; and tendered all taxes, interest, penalty and costs.

The issue in this appeal is whether or not respondent complied with the statutory requirements to obtain service by publication upon Lula May Coats, Bastion, complainant, when he secured the tax deed.

The trial court found from the evidence that statutory notice of the respondent's application for tax deed was not given and that the respondent did not exercise due diligence in connection with securing publication notice upon complainant of such application for tax deed. For these reasons the court set aside the tax deed and found complainant to be the owner.

Respondent contends that the judgment is not sustained by sufficient evidence and is contrary to law.

█ It is pointed out that actions presenting the question of whether the applicant for a tax certificate deed exercised due diligence to ascertain the whereabouts, residence or business addresses of record holders, before notice by publication of such application, have been treated as causes of equitable cognizance. Grover v. Locke, Okl., 279 P.2d 319. As such, they are subject to the rule of law that in an action of equitable cognizance the Supreme Court will examine the entire record and weigh the evidence but will not reverse the trial court unless the judgment is clearly against the weight of the evidence. Bowen v. Hamilton, Okl., 393 P.2d 858.

Title 68 O.S.1961, § 451, now appearing as 68 O.S.Supp.1965, § 24323 (without change) prescribes the procedure to be followed to secure a tax certificate deed. Section (a) thereof provides in part that the holder of the certificate shall cause a written notice to be served upon the owner of the lands if he is within the State. Section (b) provides in part as follows:

"If it shall be made to appear by the return of the service of such notice that the owner of such land cannot be found in the county in which such land is situated, and if it shall be made to further appear by the affidavit of the holder of the tax certificate or his agent, filed in the office of the County Clerk, that the owner or owners of the real estate are nonresidents of the State, or that the residence or place of business of such owner or owners is not known to the holder of such tax certificate, *and cannot be ascertained by any means within the control of such holder* of the tax certificate, and that the holder of such tax certificate cannot by the exercise of reasonable diligence make service upon such owner within the State, then in such cases, service shall be made by publication. * * * All service and return shall be made in the same manner as that of summons in courts of record. * * *" (emphasis ours)

█ In Jones v. Buford, Okl., 359 P.2d 232, we held that, in matters pertaining to tax sales, the statutes prescribing the manner of service of notice of application for tax deeds and the issuance of tax deeds thereunder are mandatory and not directory.

Respondent filed his affidavit for publication service of notice for application for tax deed on January 10, 1962, reciting in part as follows:

"That he has caused notice to be issued to the Sheriff of Mayes County, Oklahoma, directed to:

Lula May Coats, otherwise known as Lula M. Coats and as Lula May Coates

if living, and if they, or either of them be dead, then the unknown heirs, executors, administrators, devisees, trustees, creditors and assigns, of such deceased person or persons, or to any person owning or claiming any right, title or interest of any nature or kind as an owner, tenant, or otherwise to the aforementioned real property, and the Sheriff returned said notice with the notation 'no such person found in my county', and therefore, this affiant is informed and believes, and therefore avers that said person is not resident of this state, and this affiant, cannot by the exercise of due diligence and upon inquiry ascertain the present residence, place of business, post office address or whereabouts of said person, and therefore affiant desires to secure service thereupon by publication as authorized by the statutes of this state."

Thereafter, on January 15, 1962, an affidavit of non-mailing was filed. This instrument was executed by respondent's attorney.

It was stipulated at the trial that the land was patented to the complainant Lula May Coats, now Bastion, a member of the Cherokee Tribe of Indians, and that she was the record owner thereof at the time of delivery of the tax deed, which deed was recorded April 16, 1962.

Complainant's testimony by deposition taken in Portland, Oregon, was that she was an infant when the land was allotted to her in 1906; that she was two years old in 1908 when the land became taxable; and that various members of her family paid the taxes on the land. It was stipulated that the county treasurer's records reflected the tax-

es due for the years beginning in 1949 were paid as follows: 1949 by John Coates, 1950 through 1954 by E. E. Coates, 1955 and 1956 by John Coates, 1957 by Lula M. Coates, and 1958 through 1963 by J. Curtis Martin (respondent). Her testimony to show lack of diligence by respondent and that her out-of-State residence address could have been ascertained by an honest and sincere effort was that she received a letter at her San Francisco, California, address from the Board of County Commissioners of Mayes County, written by the County Engineer, dated April 19, 1940, requesting an additional 16½ foot easement for road purposes, and enclosing the easement instrument (which she said she signed) and then introduced the original letter and copy of the statement; that in 1949 or 1950 she received a letter at her *Hillsboro*, Oregon, address from the respondent offering to buy the land, and she wrote him that she was not interested in selling; that she received at her San Francisco address a "Notice of Change In Assessed Value" of the land from the County Assessor of Mayes County, addressed to her as Mrs. Everett Bastion, dated May 29, 1962, and this document was placed in evidence; that her family had lived in Pryor (Mayes County), Oklahoma, for a number of years; and that her mother, Susie D. Coats, her brother, Sog Coats, and brother-in-law, Homer M. Dunham, lived in Pryor and had been there for a number of years and were well known in the community, and it was well known that she was related to these people.

The county assessor testified that the notice mailed from his office regarding change of the assessed value was sent to complainant at an address ascertained by an employee in his office. Homer M. Dunham, brother-in-law of complainant, testified that he had lived in Mayes County all of his life and had been a member of the equalization and excise board; that he knew complainant's address for a number of years had been *Hillsboro*, Oregon, and his wife had paid the taxes on the property to the time of her death; that he had known respondent

and his attorney for a long time and that he thought it was generally known that he was the brother-in-law of complainant and he could have furnished complainant's address if inquiry had been made of him.

Respondent testified that he had bought the adjoining land some years before acquiring the tax deed and had fenced in the subject vacant land with his own land; that he got the address of complainant from the county treasurer's office and wrote her a letter in 1946 or 1947, and did not get it back, but did not get an answer; that he looked at the "tax rolls of the tax book" every year and could not find who paid the taxes, and:

"Q. All right, sir. Now, later on, did you have any further dealings in the land.

A. Yes sir and I asked Mr. Bob Chambers to get me the address and he wrote it down.

Q. And about when was that if you know.

A. Well, I asked him in 1937 and 38.

Q. All right, and.

A. 58 I believe it was.

MR. THOMAS:

1958?

A. It's on the record up there."

Respondent further testified he made no inquiry of the county assessor and did not go to the records to find out if complainant had a patent from the Cherokee Nation, and did not know any of the Coats family. Respondent produced two witnesses who had lived in the area of the land for a considerable time and they testified they did not know the Coats family.

█ It is our opinion that the trial court concluded from this record that over a period of years, both before and after the time of the application for tax deed, various persons had sought and ascertained the out-of-State address of complainant when they wished to communicate with her, and that on at least one occasion the respondent had experienced no difficulty in this respect when he was interested in buying the land from complainant. These sources of information were as available to respondent as they were to other persons. It is obvious that the last known address of complainant of which the respondent clearly had knowledge was Hillsboro, Oregon, but respondent neither alleged this fact in his affidavit for service by publication nor mailed a copy of the notice to that address. It further appears significant, as bearing on the question of whether respondent exercised due diligence, that respondent's affidavit for publication notice did not recite that the residence or place of business of the owner "cannot be ascertained by any means within the control of such holder of the tax certificate" as provided by 68 O.S.1961, § 451, now appearing as 68 O.S.Supp.1965, § 24323 (without change) supra. Milroy v. McFerran, Okl., 270 P.2d 329, 331.

In Faulkner v. Kirkes, Okl., 276 P.2d 264, it is stated:

"Service by publication, though necessary in some instances, is a substitute form of service. The affidavit required by statute, [68 O.S.Supp.1965, § 24323] 68 O.S.1951, § 451, being mandatory and jurisdictional, must be made in good faith and the one obtaining publication service must make an honest effort to get the information indicated by the affidavit. Where the weight of the evidence shows that the one obtaining service by publication did not make a sincere and diligent effort to obtain the information required but on the contrary avoided obtaining knowledge which would permit the mailing of the notice such person is guilty of legal fraud. A certificate tax deed based on service by publication had under such circumstances is void and will be vacated."

See also Grover v. Locke, supra, and Milroy v. McFerran, supra.

Had the respondent exercised the same diligence in connection with his application for tax deed as was exercised by the other parties in the instances reflected by the evidence, and when he sought to buy the land, no doubt he could have ascertained complainant's out-of-State residence.

It is our conclusion that the judgment of the lower court is not clearly against the weight of the evidence.

Affirmed.

All the Justices concur.

The Court acknowledges the services of CHARLES B. STEELE who with the aid and counsel of GEORGE R. INGLISH and Q. D. GIBBS, as Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the Court. The Chief Justice then assigned the case to a Justice of this Court for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.