Wright BOMFORD, Audrey S. Bomford, Tom Bomford, Dan German, and Dan German, Executor of the Estate of Dee German, Deceased, Plaintiffs in Error,

v.

SOCONY MOBIL OIL CO., Inc., a New York Corporation, Major Royalty Corporation, a corporation, R. B. Eavans, Marie Evelyn Eavans, Guy Looper, Lena A. Looper, F. L. Finley, R. J. Dollar, Paul A. Tucker, and the Unknown Heirs, and Heirs, Administrators, Executors, Legatees, Devisees, Trustees and Assigns, immediate and remote, of Sampson Joe, Deceased, Choctaw Roll No. 4828, and The Unknown Claimants to the lands involved herein, the Heirs, Executors, Administrators, Legatees, Devisees, Trustees and Assigns, immediate and remote, Defendants in Error.

No. 40869.

Supreme Court of Oklahoma.

April 9, 1968.

W. F. Semple, Tulsa, for plaintiffs in error.

Carloss Wadlington, Ada, for defendants in error.

McINERNEY, Justice.

This case turns on the validity of a prior quiet-title decree interposed as a bar to the present action. The decree is challenged for fatal defects in the publication process on which it is rested. At issue below was plaintiffs' title to a mineral estate underlying land situated in Latimer County. Their appeal is from an adverse judgment of the trial court.

Plaintiffs deraign their title to the minerals through mesne conveyances from a Choctaw allottee. The last muniment of title vested in them in 1923. Defendants are purchasers of a mineral estate from one who had acquired it in April 1959, from a grantee in fee of a certificate tax deed of Nov. 5, 1958. The tax deed grantee's title to the fee was quieted in him, as against all holders of record title, by decree of the District Court of Latimer County rendered on Jan. 24, 1959. In that action service upon the defendants was effected solely by publication. The present action to cancel mineral deeds of record and quiet title to the mineral estate was commenced over three years after the rendition of the 1959 judgment.

Urging error in the trial court's failure to quiet their asserted title, plaintiffs argue that both the tax deed and the 1959 quiet-title decree were void on the face of the record and hence subject to collateral attack at any time. 12 O.S.1961, § 1038.

We need not pause here to inquire into the validity of the proceedings preceding the issuance of the certificate tax deed. This is admittedly a collateral attack on the 1959 decree. Our inquiry into its validity may not extend beyond an examination of the judgment roll in the action. Collingsworth et al. v. Hutchison, 185 Okl. 101, 90 P.2d 416, 418; Lind v. Goble, 117 Okl. 195, 246 P. 472, 475. Unless the record affirmatively discloses want of jurisdiction, every fact not negatived on the face of the judgment roll must be presumed to support a judgment of a court of general jurisdiction. Yahola Oil Company v. Causey, 181 Okl. 129, 72 P.2d 817, 819; Weimer v. Augustana Pension and Aid Fund, 179 Okl. 572, 67 P.2d 436, 438. The challenged proceedings which culminated in the issuance of the 1958 tax deed do not appear on the face of the judgment roll in the 1959 quiet title action. We cannot here consider their validity. Moreover, it is not the tax deed but the 1959 quiet-title decree that was interposed in the trial court as a bar to the present suit.

Examining the 1959 judgment roll in the light of our past decisions, we are constrained to hold that neither of the asserted defects in the publication process, discussed later, can operate to render the 1959 quiet-title decree void on the face of the record proper.

The publication affidavit in the 1959 quiet-title action names everyone who then

held record title to the affected land. It describes land identical to that conveyed by the certificate tax deed and plainly states that a) the action being prosecuted is one to quiet title; b) the action is one in which publication service is authorized; c) plaintiff (tax deed grantee) does not know and with due diligence and upon diligent inquiry cannot ascertain defendants' addresses, residences or places of business; and d) plaintiff, with due diligence, is unable to effect service of summons upon the defendants within the State of Oklahoma.

Plaintiffs urge the affidavit does not meet the statutory requirements because it fails to state with particularity why the named defendants could not be served personally within the state.

Publication process made pursuant to the authority of Secs. 5612 and 5613, C.L.1909, was deemed fatally defective when based on an affidavit which did not state facts showing the diligence used in order to. serve the defendant within the state. The provisions of the cited statutes were amended in 1911 by the adoption of Sec. 4722, R.L.1910. See H.B. 562, S.L.1910–1911, p. 70. That section, as amended by subsequent enactments, is now designated as 12 O.S.1961, § 170. As indicated by the revisers' note which appears beneath the text, the object of the 1911 amendment was to make "[p]laintiff's statement of due diligence * * * sufficient for publication, instead of leaving it to conjecture as to just what showing of diligence is necessary." See, Vol. II, R.L.1910, p. 1222. In conformity with the revisers' intent, our decisions subsequent to the enactment of Sec. 4722 hold that a publication affidavit meets statutory requirements when it alleges substantially in the words of that section and of Sec. 4723, R.L.1910, that "the plaintiff with due diligence is unable to make service of summons upon such defendant or defendants within the State." The quoted words reappear in identical form in all subsequent amendments, but were slightly and insignificantly changed by S.B. 181, S.L.1957, p. 78.

Our construction so placed on Secs. 4722 and 4723 dispensed with the necessity of setting forth in the pre-publication affidavit any probative or evidentiary acts of due diligence used in an effort to serve the defendant personally within the state. Keisel v. Reynolds, 125 Okl. 295, 244 P. 1104, 1106; Texas-Omar Gasoline & Oil Co. v. North American Car Co., 123 Okl. 57, 251 P. 1010; annotation in 21 A.L.R.2d 929, 971; Brown, Default Judgments in Quiet Title Actions, 14 Okl.L.R. 491, 499, 500. Feagin v. Davidson, Okl., 431 P.2d 396, 400, serves as the most recent reiteration of this view.

While our time-honored construction of Secs. 4722 and 4723 is in perfect harmony with the intent of the 1910 revision and the pre-1953 amendatory acts which followed, it may now appear somewhat questionable when considered in the light of the added language in the 1953 amendment to 12 O.S.1951, § 171. H.B. 776, S.L.1953, pgs. 49, 50, 12 O.S.Supp.1953, § 171. That amendment, which authorized the use of a verified petition or pleading along with a pre-publication affidavit, provides in the last sentence of the first grammatical paragraph of the section, that *"allegations and facts"* of due diligence shall be stated *"either in the verified petition or pleading filed in said case, or in a separate affidavit filed therein"* before the *"party may proceed to make service by. publication."* Post-1953 acts further amending Sec. 171, supra, embody language identical to that which is italicized. See S.B. 182, S.L.1957, p. 80, 12 O.S.Supp.1957, § 171, and H.B. 807, S.L.1965, p. 925, 12 O.S.Supp.1965, § 171. The effect of the 1953 amendment has not been specifically urged in any of the cases brought here since its enactment. While its legislative history is not altogether clear, there exist some indications that the insertion which requires the affiant's inclusion of "allegations and facts" may have been intended to meet the standards promulgated by the 1950 decision of the U. S. Supreme Court in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865, 873.

■ What can be safely concluded from the scanty source materials available is that the 1953 legislature which adopted the act amending 12 O.S.1951, § 171 also enacted extensive amendments to our probate code. The latter were expressly designed to correct existing deficiencies in probate procedure for the purpose of complying with Mullane. See 23 O.B.J. 1401, 1425 and 1427 et seq.; H.B. 676, S.L.1953, p. 232. While we are not satisfied that the legislature did intend to return us to the uncertainties of the pre–1910 practice and are mindful that the causal link between Mullane and the language of the 1953 amendment is rather inconclusive, one thing remains clear: the plain intent of the 1953 amendment was to require that the plaintiff who is unable to effect personal service on his adversary within the state and who seeks resort to publication process, disclose to the court, in one form or another, "the allegations and facts" concerning the "due diligence" exercised in ascertaining the adversary's whereabouts.

■ The general rule that emerges from Mullane and subsequent cases is simple: A state cannot invest itself with, and exercise through its courts, judicial jurisdiction over a person in a proceeding which may directly and adversely affect his legally protected interests, unless a method of notification is employed which is reasonably calculated to give him knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be given; the notice required will necessarily vary with circumstances and conditions, and in some instances, as in the case of missing or unknown persons, "personal notice might not be reasonably possible." But notice by publication is clearly insufficient with respect to one whose name and address are known or readily ascertainable from sources at hand. In other words, the requirements of due process are not satisfied unless due diligence has been exercised to

find the whereabouts of the defendant. Mullane v. Cental Hanover Bank, supra; Schroeder v. City of New York (1962), 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255; Walker v. City of Hutchinson, Kansas (1956), 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed. 2d 178; Wisconsin Electric Power Co. v. City of Milwaukee (1957), 352 U.S. 948, 77 S.Ct. 324, 1 L.Ed.2d 241; Pierce v. Board of County Com'rs of Leavenworth Co., 200 Kan. 74, 434 P.2d 858; City of Houston v. Fore, Tex.Civ.App., 401 S.W.2d 921.

Oklahoma has long recognized the Mullane doctrine. Some fifteen years before Mullane this court pronounced in Ross v. Thompson, 174 Okl. 183, 50 P.2d 385, that publication service is void as to "parties whose names and claimed interest may be ascertained from the records of the county in which the land is situate" and that "[b]efore a plaintiff may resort to service by publication on unknown owners of realty, or sue defendants by name, if living or if dead, their heirs, etc., due diligence must be exercised to ascertain whether defendants so sued are living or dead, and if dead, the names and whereabouts of their heirs." See also, Martin v. Bastion, Okl., 424 P.2d 1, and cases cited therein.

■ Due diligence is a relative term lacking a fixed content. It presents a question for judicial determination which must be decided in the first instance by the trial court. Its jurisdiction over the absent defendants clearly depends upon the resolution of that issue. And in order to decide the matter the trial judge must have the facts before him. If the facts before the court have a legal tendency to show a diligent search for the whereabouts of the defendant, or the whereabouts and identity of his heirs, and the court is satisfied that primary sources at hand, such as local tax rolls, deed records, judicial records and other official records, as well as available secondary sources, such as a telephone directory, a city directory or the like, have been exhausted in a meaningful pursuit of information, the approval of publication process as a method of notification is to be

regarded with the same effect as a decision upon any other fact issue submitted for judicial determination. But an inquiry and determination there must always be.

■■■ A court is bound to take notice of the limits of its authority. It is its right and duty to make an examination into its jurisdiction, whether raised by the pleadings or suggested by counsel or not, and to determine its power to entertain the cause. If the court finds at any stage of the proceedings that it is without jurisdiction, it is its duty to take proper notice of the defect by staying the proceedings, dismissing the cause, or by other appropriate action. East Side Baptist Church v. Morgan, 204 Okl. 685, 233 P.2d 957, 958; Alexander Drug Co. v. Holbert, 156 Okl. 198, 10 P.2d 412; Fehr v. Black Petroleum Corporation, 103 Okl. 241, 229 P. 1048, 1050, 21 C.J.S. Courts § 114, pp. 175, 176.

■■■ When constitutionally protected rights are at stake, the court's determination of the validity of its process must be made, at the latest, when the judgment is rendered and before it is sought to be enforced or vacated. Due process is violated by the mere act of exercising judicial power upon process not reasonably calculated to apprise the defendant of the pendency of an action. Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910. And the violation is not cured by granting the aggrieved party a hearing on his motion to set aside the tainted judgment. The burden of affording proper notice rests on the plaintiff. It cannot be avoided by the perfunctory judicial approval of an unsupported conclusion of "due diligence". Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62.

■■■ Our practice and procedure are not conducive to the conduct of an inquiry into the issue of due diligence prior to the rendition of a default judgment in a case in which resort was had to publication process. While the terms of 12 O.S.1961, § 174 provide that "[n]o judgment by default shall be entered on * * * [publi-cation] service until proof thereof be made, and approved by the court * * *", the statute does not expressly require that an inquiry into plaintiff's due diligence be conducted. It merely provides that the instruments comprising publication process and proof thereof shall be examined and approved. Washburn v. Culbertson, 181 Okl. 476, 75 P.2d 190, 193.

In some states in which an order for publication service is required before process by publication may be effected, such order may not be made unless the judge is satisfied that the plaintiff has in fact exercised due diligence to ascertain the names and residences of defendants before resorting to constructive service. Sheffield v. Carter, Fla.App., 141 So.2d 780, 786. While this appears to be a safer practice, our present statute contains no similar requirement. The provisions of our Children's Court Act, 20 O.S.1961, § 886, do, however, contemplate a pre-publication inquiry and an order authorizing publication notice. We held in Copas v. Reents, Okl., 365 P.2d 983, 986, that an order authorizing publication process after finding personal service "impracticable" was essential. The reason for a judicial inquiry into due diligence and a determination of its existence, as required by the provisions of the Children's Court Act, is equally critical in other civil actions.

Our decisional law, as it now stands, does not reflect the apparent reasons underlying the 1953 amendment to 12 O.S. 1951, § 171. Nor does it provide a proper mechanism for a meaningful judicial determination of due diligence from probative facts as distinguished from the pleader's sworn conclusion of its existence. Jurisdictional facts can not be rested on such a frail basis. The present procedure makes it possible for a plaintiff to procure a default judgment on publication process solely upon his own, or his counsel's, sworn declaration of a pure legal conclusion and without disclosing the pertinent facts. This, in its effect, amounts to a method of sanctifying self-declared land claims by in-

discriminately affording them the privilege of registration as judgments. A true process of adjudication is absent.

Unless the reference to an affidavit of due diligence is considered only a formality, the terms of 12 O.S.Supp.1965, § 171 must be construed to require that *before* a plaintiff may resort to publication process he must make a diligent search of all available sources at hand to ascertain the whereabouts or post-office addresses of his adversaries. Recent decisional law, as noted above, impels us to strengthen judgments based on publication service and to protect future titles resting thereon. Since publication is the basis for the court's jurisdiction, and notice, together with the opportunity to be heard, is the foundation of due process, we conclude that the particular probative facts showing due diligence must be presented to the court before judgment is rendered. These facts need not be set forth in the affidavit or in a verified pleading but they *must* be adduced by proof presented at the hearing to be conducted before entry of judgment. The trial judge *shall not* approve publication process effected in any case unless he is satisfied from the evidence presented that plaintiff has met the requisite standard of due diligence. It would be a good practice to recite in the journal entry of judgment not only that "service by publication has been duly and legally made and the court, after examining the record and proof of publication, approves the process", but also to include a general finding made by the court on the factual issue of due diligence.

We cannot accede to plaintiffs' contention that the judgment roll in the 1959 quiet-title action is tainted by a fatal defect because it fails to affirmatively show an active and diligent effort to procure personal service upon the defendant within the state. Where, as here, the journal entry recites that the court, as required by statute (12 O.S.1961, § 174), has examined the affidavit and proof of publication and has approved the service so given, such recital has been treated by our past

decisions as an effective adjudication of compliance with the publication statutes and the judgment is presumed valid unless the recital is affirmatively negatived on the face of the judgment roll. Ritchie v. Keeney, 181 Okl. 207, 73 P.2d 397, 400; Smith v. Head, 192 Okl. 216, 134 P.2d 973, 975; Feagin v. Davidson, supra, 431 P.2d at p. 400; Collingsworth v. Hutchison, supra, 90 P.2d at p. 418. There is nothing on the face of the judgment roll here that negatives the allegation of due diligence set forth in the affidavit. Moreover, the evidence adduced at the trial does not disclose a failure to diligently pursue any available sources at hand in order to ascertain the last post-office addresses or whereabouts of those defendants in the 1959 quiet-title suit who were served solely by publication.

Plaintiffs lastly contend the publication notice in the 1959 suit was void because it appeared on December 11, 1958– December 18, 1958– and on December 25, 1958. We are urged that the statute requires a 21 days' lapse between the first and last publication, and a shorter period between them constitutes a fatal defect apparent on the face of the judgment roll. The same point was urged in Feagin v. Davidson, supra, 431 P.2d at p. 401. We there held that a notice published three times in intervals of one week between each successive publication meets the requirements of 12 O.S.1961, § 173, even though the period between the initial and the last publication is less than 21 days. See also, Elfert v. Elfert, 132 Kan. 218, 294 P. 921, 923.

The 1959 quiet-title decree cannot be regarded as void on the face of the judgment roll. The facts dehors the record, adduced below, do not establish that there were sources at hand from which the whereabouts or post-office addresses of the absent defendants (served solely by publication) could have been ascertained.

Mindful of our duty to guard against any attempt to upset settled titles by imposition of new requirements which

did not exist before, we declare that all procedural modifications enunciated herein shall not be construed as invalidating the publication process in this case or in any case in which the trial court's judgment shall have been rendered before this opinion becomes final. Fidelity-Phenix Fire Insurance Co. of New York v. Penick, Okl., 401 P.2d 514, 518; see also, American-First Title & Trust Company v. Ewing, Okl., 403 P.2d 488, 496.

Affirmed.

JACKSON, C. J., IRWIN, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.

LAVENDER, J., concurs in part and dissents in part.

LAVENDER, Justice (dissenting in part):

I concur in those portions of the majority opinion herein which are represented by the first, second, and third paragraphs of the syllabus, and in the determination that the judgment under attack in the trial court was not shown to be violative of the "due process" provisions of the state or federal constitutions and should be affirmed; but I dissent to all other portions of the opinion.