Dear Senate Ray Giles,
¶ 0 The Attorney General has received your letter asking for an official opinion addressing, in effect, the following questions:
1. What constitutes a violation of 52 O.S. 540 (1981), whichaddresses the issue of the amount of time during which proceedsfrom production of oil and gas can be held by a first purchaseror substituted first purchaser, and what interest rates apply toany held proceeds?
 2. Are proceeds, and any interest due thereon, which are dueand payable under the statute, to be calculated from the date offirst sale if the date of first sale is prior to July 1, 1980,the date when 52 O.S. 540 was enacted?
 3. Do the interest provisions of 52 O.S. 540 (1981), asrecently amended in 1989 Okla. Sess. Laws, c. 241, 1, apply tounclaimed proceeds from oil and gas production, and if so, atwhat rate?
 Violations of the Act
A. Major Compliance Requirements
¶ 1 Title 52 O.S. 540 (1981), was enacted by the Oklahoma Legislature in 1980, and made effective July 1, 1980. There are two major compliance requirements contained in subsection A of the statute which must be met by either the first purchaser or the substituted first purchaser of a producing oil and/or gas well. They are as follows:
 1. The proceeds derived from the sale of oil or gas production from any oil or gas well shall be paid to persons legally entitled thereto, commencing no later than six months after the date of first sale, and
 2. [T]hereafter no later than sixty days after the end of the calendar month within which subsequent production is sold.
¶ 2 Subsection D of 52 O.S. 540 of the amended act goes on to provide:
 Any said first purchaser or owner of the right to drill and produce substituted for the first purchaser as provided herein that violates this section shall be liable to the persons legally entitled to the proceeds from production for the unpaid amount of such proceeds with interest thereon at the rate of twelve percent per annum to be compounded annually,[1] calculated from date of first sale.
¶ 3 Clearly, a violation of one or both of the two major requirements of the Act will trigger the twelve percent interest rate. In determining the meaning of a statute, the cardinal rule of construction is to ascertain the intention of the Legislature by resort to the statutory language. Walker v. St. Louis-SanFrancisco Ry. Co., 671 P.2d 672 (Okla. 1983).
B. Exceptions to the Two Major Compliance Requirements
¶ 4 There are two factual situations provided for in subsection A of 52 O.S. 540 when a first purchaser or substituted first purchaser will not be held to strict compliance of the two aforementioned requirements of the statute. They are set out in the following language:
 1. Provided, such purchasers may remit to the persons entitled to such proceeds from production semiannually for the aggregate of six (6) months' accumulation of monthly proceeds of amounts less than Twenty-Five Dollars ($25.00).[2]
 2. Provided, however, that in those instances where such proceeds cannot be paid because the title thereto is not marketable, the purchasers of such production shall cause all proceeds due such interest to earn interest at the rate of six percent (6%) per annum to be compounded annually, calculated from date of first sale[3] until such time as the title to such interest has been perfected. Marketability of title shall be determined in accordance with the then current title examination standards of the Oklahoma Bar Association.
¶ 5 The additional language "compounded annually" and "calculated from date of first sale" appears to underscore the legislative intent to insure that first purchasers or substituted first purchasers do not delay in determining marketability of particular interests in a well.
C. Nonpayment of Six Percent Interest When Due
¶ 6 With regard to the six percent interest rate, which is applied to all proceeds held due to nonmarketable title, another fact situation arises. As noted above, the Legislature intended to curb delays in determining marketability of title by the July 1, 1989, amendment to 52 O.S. 540. It then follows that if at the time proceeds are paid to the legally entitled owner and such proceeds are entitled to six percent interest, which interest is not paid timely, then a violation of the act occurs.[4]
¶ 7 A violation of the statute would also occur if the semiannual payment of proceeds schedule as contained in the statute is disregarded by the purchaser or substituted first purchaser.
¶ 8 In any event, the exact date upon which the Act is violated turns upon the facts of each case as applied to the provisions of52 O.S. 540(A) (1981), referenced above.
 Interest on Proceeds
¶ 9 In your second question you ask if proceeds and interest due thereon may be calculated from the date of first sale if the date of first sale is prior to July 1, 1980, when 52 O.S. 540
(1981) was enacted.
¶ 10 In A.G. Opin. No. 82-108, the Attorney General, interpreting 52 O.S. 540 (1981), stated that:
 interest may be levied from and after July 1, 1980, under authority of 52 O.S. 540 (1981), on any proceeds from the sale of oil and gas, which proceeds are held on that date by the first purchaser (or operator) because of unmarketable title to mineral estates or interests from which such oil and gas was produced. Interest on such proceeds is thereafter computed irrespective of the date or time such proceeds were originally acquired by the first purchaser (or operator) if the interest may otherwise be levied under the express provisions of 52 O.S. 540(A) (1981). The exact date such proceeds are subject to the statutory interest must be determined from an application of 52 O.S. 540(A) (1981), to the facts of each particular case.
¶ 11 The reasoning of the prior Attorney General Opinion is sound and should govern the resolution of your second question. Therefore, proceeds and interest due thereon can accrue only from and after July 1, 1980, the exact date turning upon the unique facts of each individual case. Interest, whether twelve or six percent, is to be compounded annually.
 Unclaimed Proceeds
¶ 12 In your third question, you ask if the twelve percent interest rate penalty as found in subsection D of the amended statute can be assessed against those first purchasers (and substituted first purchasers) who violate the act by nonpayment or late payment of unclaimed proceeds. Unclaimed proceeds generally are those proceeds belonging to persons entitled to the receipt of such monies who are unknown or who cannot be located after the exercise of due diligence.
¶ 13 Title 52 O.S. 552 (1989) provides that when royalties, bonus payments, or other monies are directed to be paid under an Oklahoma Corporation Commission pooling order and the persons entitled to the receipt of such monies are unknown or cannot belocated after exercise of due diligence, the holder of such monies must set up an escrow account for such funds. One year after the date of the pooling order, the holder shall submit the report of funds that have been held in escrow, and shall transmit to the Corporation Commission the funds in excess of one hundred dollars per person that have been so held. If additional monies are subsequently generated from mineral interests included in a pooling order, they are to be placed in escrow and transmitted annually by the holder to the Corporation Commission also, along with the names of mineral owners who have in the intervening year submitted proper claims of ownership to mineral interests covered by the Act. Rule 7-107 of the Oklahoma Corporation Commission Rules of Practice requires that an Affidavit of Compliance be filed for compliance with 52 O.S. 552 (1989). If no affidavit of compliance is on file with the Commission, a company's plugging bond will not be released until timely filing has been made. There are no interest penalties involved in cases involving pooling orders.
¶ 14 Reference to 52 O.S. 552 (1989) and to Corporation Commission rules should be made in any case where unclaimed proceeds are the result of a pooling order issued by the Corporation Commission.
¶ 15 Unclaimed proceeds are not necessarily synonymous with proceeds held by virtue of problems arising from an unmarketable title; a person may be entitled to proceeds by virtue of a clear and marketable title, yet the proceeds remain unclaimed because the person is unlocatable after a diligent search for his or her whereabouts. It is important to note that a diligent search by the purchaser or substituted first purchase is a necessary predicate to a claim that a person is unlocatable.
¶ 16 In the case of Bomford v. Socony Mobil Oil Co.,440 P.2d 713 (Okla. 1968), the Oklahoma Supreme Court discusses, in an analogous context, the finding of due diligence when attempting to locate a defendant or other persons:
 [when] the facts before the court have a legal tendency to show a diligent search for the whereabouts of the defendant, or the whereabouts and identity of his heirs, and the court is satisfied that primary sources at hand, such as local tax rolls, deed records, judicial records and other official records, as well as available secondary sources, such as a telephone directory, a city directory or the like, have been exhausted in a meaningful pursuit of information[.]
440 P.2d at 718. (Emphasis added).
¶ 17 In essence, then, a purchaser or substituted purchaser may not merely claim that the person legally entitled to proceeds is unlocatable if no search for that person has been made.
¶ 18 Title 52 O.S. 540, in both its prior and amended forms, is silent as to marketable unclaimed proceeds. Unmarketable unclaimed proceeds are covered under the six percent unmarketable title provisions contained in subsection A of the statute.
¶ 19 As noted in the case of Jackson v. Independent SchoolDistrict No. 16 of Payne County, 648 P.2d 26 (Okla. 1982), the intent of the Legislature should, where possible, be determined from the statutory language. Title 52 O.S. 540 (1989), specifically covers payments of proceeds to "persons legally entitled thereto." The statute also specifically covers payments of proceeds to persons whose "title thereto is not marketable." The statute does not specifically cover unclaimed proceeds — those proceeds emanating from a marketable title but whose owners cannot be located. Therefore, the interest provisions in question do not apply to this particular type of unclaimed proceeds.
¶ 20 It is, therefore, the official opinion of the AttorneyGeneral that:
 1. Any deviation from the compliance requirements of 52 O.S.540 (1989), which addresses the issues of time during which oiland gas sales proceeds may be held by a first purchaser, and theinterest thereon, violates the statute. Violations of the actresult in the twelve percent interest rate penalty being assessedon held proceeds. A violation of the act includes nonpayment ofany six percent interest due on unpaid proceeds when proceeds aredue and payable. The exact date that a violation occurs in anyparticular case cannot be answered as a matter of law, butdepends upon the specific facts of each case.
 2. Title 52 O.S. 540 (1989) is to be applied prospectivelyas previously determined in Attorney General Opin. No. 82-108.Therefore, interest due on proceeds which are due and payableunder the statute, does not attach until after July 1, 1980.Interest due under the Act is to be compounded annually. Intereston proceeds held under the unmarketable title provisions of theact is to be calculated from the date of first sale if the dateof first sale is subsequent to July 1, 1980, or from July 1,1980, if date of first sale is prior to July 1, 1980. The exactdate such proceeds are subject to this particular statutoryinterest rate and to any other interest rates in the Act must bedetermined on a case by case basis.
 3. Title 52 O.S. 540 (1989) does not cover marketableunclaimed proceeds and, therefore, the interest provisionsenumerated in the act do not apply to unclaimed proceeds.Unclaimed proceeds for purposes of this opinion are thoseproceeds whose owner or owners cannot, after a diligent search bythe first purchaser or substituted first purchaser, be located. Aresolution of the issue of what constitutes a diligent search bythe purchaser or substituted purchaser for the owners ofunclaimed proceeds must also be determined on a case-by-casebasis.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
ALICE S. MITCHELL ASSISTANT ATTORNEY GENERAL
[1] Underlined language added by Senate Bill 107. All references to the statute will refer to the amended statute as contained in 52 O.S.Supp. 1988, § 540[52-540], c. 241, § 1.
[2] Statute previously said fifteen dollars.
[3] Emphasized language added by 1989 Okla. Sess. Laws, c. 241, § 1.
[4] By way of illustration, if the first purchaser or substituted first purchaser is holding one hundred dollars which proceeds cannot be distributed because the title thereto is unmarketable and at a later date the title becomes marketable, then the six percent interest rate would attach. The amount owed then would be one hundred six dollars. If the first purchaser or substituted first purchaser pays the person legally entitled to the funds, one hundred dollars, instead of the full amount ($106.00), then twelve percent interest would be due and payable on the remaining six dollars. Therefore, when a violation occurs for nonpayment of the six percent interest in addition to the held proceeds, the first purchaser or substituted first purchaser would be required to pay twelve percent interest on the unpaid proceeds.