2008 OK 8

In the Matter of the **TURKEY CREEK CONSERVANCY DISTRICT** in Kingfisher, Garfield, Alfalfa and Major Counties in the State of Oklahoma.

Jack G. Witt, Lisa Ann Meyers and Jack G. Witt, Trustees of the Lisa Ann Meyers Family Trust, Doyle Jones, Marvin Jones, Thelma Berkenbile and Max Vincent, Appellants,

v.

Turkey Creek Conservancy District in Kingfisher, Garfield, Alfalfa and Major Counties in the State of Oklahoma, Appellee.

No. 100,513.

Supreme Court of Oklahoma.

Jan. 29, 2008.

PER CURIAM.

¶1 Landowners in a conservancy district appeal a trial court judgment approving an appraisers' report. When approved, the report sets the amounts of assessments to be paid by the landowners for flood control projects in the district. If not paid as required, the assessments become liens on their land in the district and subject it to tax sale. One issue raised to support reversal is that the trial court erred in denying motions to quash that argued notice by publication of the report, the time set for filing objections to it and the date set for hearing on the report and any objections filed, was insufficient to comply with Okla. Const. art. 2, § 7. Art. 2, § 7 provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." The Court of Civil Appeals (COCA), Division II, affirmed the judgment, rejecting the due process argument and others raised to support reversal.

¶2 We hold the trial court erred in denying the motions to quash and that publication notice alone is constitutionally deficient when the names and addresses of those subject to the assessment are known or readily available. Some other form of notice reasonably calculated to apprise them of the report and the opportunity to challenge it is required to satisfy procedural due process. We reverse the trial court judgment because of the insufficient notice, vacate the COCA's opinion affirming it and remand to the trial court for further proceedings.

1. We cite to the 2001 version of the Conservancy Act of Oklahoma (the Act), 82 O.S.2001, § 531 et

## STANDARD OF REVIEW

■ ¶3 Constitutional questions as to whether procedural due process rights have been violated are subject to a *de novo* review standard. *See In re A.M.*, 2000 OK 82, ¶6, 13 P.3d 484, 486–487. Such a review involves an independent and non-deferential re-examination of another tribunal's legal rulings. *Id.*

## OVERVIEW OF STATUTORY SCHEME, FACTS AND PROCEDURAL BACKGROUND

¶4 Appellee, Turkey Creek Conservancy District in Kingfisher, Garfield, Alfalfa and Major Counties in the State of Oklahoma (Appellee), was formed pursuant to the Conservancy Act of Oklahoma (the Act), 82 O.S. §§ 531–688.1 [1] The many purposes for which conservancy districts may be established include flood prevention. § 541(B)(1)(a)-(g). After a district is established, the district's board of directors prepare a plan of improvements for which the district was created. § 565. In this case the plan was prepared and approved by the trial court, with an amendment not relevant to our decision here. The plan projects relate to flood water retarding structures to control erosion, sedimentation and flooding in the district.

¶5 Section 601 of the Act sets out the procedures for appointing appraisers, and three appraisers were appointed by the trial court in this case. When the official district plan is filed with the secretary of the district, the appraisers are to appraise the benefits to property within and without the district resulting from organization of the district and execution of the plan. § 602(a). The appraisers' report is to contain the name of the owner of property appraised as it appears on the current tax roll of the county and a description of the property as per government survey in tracts not exceeding 320 acres in extent. § 605. It is also required to contain the amount of benefits to each tract [*id.*], and this amount is the underlying basis for the levy of assessments against landowners should the appraisers' report be confirmed.

seq. No amendments or additions have been made to the Act subsequent to 2001.

¶ 6 When the report is filed in the case, the court clerk gives notice by publication of the filing, the opportunity to file objections to the report and the hearing date where any objections/exceptions will be heard by the trial court. § 606. The notice is required to contain the names of landowners (like Appellants) who are identified in the appraisers' report as owning land that will be affected by the proposed improvements [*id.*] and, of course, will be subjected to an eventual assessment based on the appraised benefit, assuming the trial court approves the report.

¶ 7 Section 608 of the Act provides that after hearing any exceptions to the report and appraisals contained in it, and if the trial court determines the estimated cost to the district of constructing the improvements contemplated is less than the benefits appraised, the court shall approve and confirm the appraisers' report as it may be modified and amended. Section 608 also makes it clear that when such a report is approved, the appraisals of benefits contained in it are fixed:

> If it appears to the satisfaction of the court after having heard and determined all said exceptions that the estimated cost to the conservancy district of constructing the improvement contemplated in the official plan is less than the benefits appraised, then the court shall approve and confirm said appraisers' report as so modified and amended, **and such findings and appraisals shall be final and incontestable as to property within the district.**

(emphasis added). Such an order may, however, be appealed to this Court for review. *See* § 609.

¶ 8 After the report's approval and as the affairs of the district demand it, the district's board of directors are required to levy on the property upon which benefits have been appraised an assessment in an amount then needed for execution of the district's official plan, plus a ten percent (10%) contingency, but not to exceed the appraised benefits adjudicated. § 634. If the assessments are not paid, they become liens on the properties against which assessments have been levied. § 642. Assessments remaining unpaid after they are due bear a one percent (1%) penalty per month until paid "and [are] enforceable by tax sale as a part of the ad valorem tax charge each year." § 640.

¶ 9 In the instant case, the report of the appraisers was filed in the district court in December 2002. It stated:

> We have assessed the benefits against lands in the Turkey Creek Conservancy District plus a ten (10) percent contingency naming the owners of said lands, the tract number according to the official plan of said Conservancy District, the legal description of the lands against which benefits have been assessed, the acreage affected, the amount of each assessment, the ten (10) percent contingency for each assessment and the total amount assessed against each property comprising the total area of the Turkey Creek Conservancy District as said Conservancy District now exists.

Notice of hearing on the report was published in the Kingfisher Times and Free Press on December 18 and 25, 2002 and January 1, 2003.[2] The notice listed the names of landowners that were to be subject to an assessment, the affected acreage and the amount of the assessment plus the 10% contingency. It also stated a hearing would be held on the report and any objections filed to it on January 29, 2003 at 10:00 a.m. in the district court of Kingfisher County. The notice informed that objections were to be filed prior to the hearing date and that affected property owners filing objections shall appear on that date to show cause why the report and the assessments made therein should not be confirmed as calculated by the appraisers or as the trial court may amend.

¶ 10 There is no dispute here that the publication notice given is the only notice statutorily required to landowners like Appellants regarding the appraisers' report and the opportunity to contest the appraisals con-

---

2. The publication notice relating to this appeal covered lands in the Kingfisher County Turkey Creek Watershed and the trial court judgment appealed approved the appraisers' report in respect to Kingfisher County assessments, although the report also appraised the benefits to lands in the other counties in the district; i.e., Garfield, Alfalfa and Major Counties.

tained it. There is also no dispute that the notice complied with applicable statutory requirements.

¶ 11 Prior to the scheduled hearing on the appraisers' report all Appellants (except one) filed special appearances and motions to quash.[3] The motions argued the publication notice was constitutionally deficient under Okla. Const. art. 2, § 7. At the beginning of the scheduled hearing the trial court took up the motions and allowed oral argument thereon by the parties' counsel. The trial court denied the motions.

¶ 12 Appellants' position in the trial court and on appeal is that publication notice alone is insufficient for due process purposes as to those landowners whose names and addresses are either known or readily available to Appellee. Appellee's view, both below and on appeal, is that publication notice alone, the only notice statutorily mandated, is all that is required to pass due process constitutional muster. Neither in the trial court in opposition to the motions to quash, nor in its appellate submissions, has Appellee argued that the addresses of Appellants or other like landowners are either unknown or not readily available to Appellee from the tax rolls of the counties within the district's boundaries. Furthermore, the record does not reflect as to Appellants or other such landowners listed in the appraisers' report that are subject to an assessment, that Appellee either does not know the whereabouts (i.e., addresses) of said landowners or could not ascertain same with due diligence.

¶ 13 After denial of the motions to quash and subsequent to certain continuances of the matter, the appraisers' report finally came on for hearing on the merits in January 2004. Evidence was presented in support of the report and against its approval. At the conclusion of the hearing the trial court overruled all exceptions to the report and, in effect, found that the anticipated costs to the district of the improvements specified in the official plan were less than the benefits that would accrue to the landowners. The trial court then orally confirmed the appraisers' report. The oral ruling was memorialized in a written Journal Entry which was filed in March 2004 and is the judgment on appeal.[4]

¶ 14 The appeal was assigned to the COCA. As to the due process argument raised by Appellants, the COCA decided the trial court did not err in denying the motions to quash based on the view that prior case law from this Court had upheld the constitutionality of publication notice in conservancy district cases. The COCA affirmed the trial court judgment after rejecting the due process challenge and other arguments raised on appeal by Appellants in support of reversal. Appellants then sought certiorari which we previously granted. As we explain, the COCA misconstrued the previous case law it relied on from this Court to uphold the publication notice over the constitutional challenge mounted by Appellants.[5]

*Bank of Tuskahoma v. J.B. Klein Iron & Foundry Co.*, 1937 OK 278, 68 P.2d 777; and *Kansas, O. & G. Ry. Co. v. Martin*, 1935 OK 1047, 51 P.2d 577.

3. Nothing in the appellate record submitted in this matter indicates that Appellant Max Vincent appeared at all below, although the name "Vincent, Max" is listed as a landowner of "Tract" "99" on the list of landowners contained in the December 2002/January 2003 publication notice concerning the appraisers' report. The same name appears on a list entitled, "Kingfisher County Turkey Creek Watershed Assessment of Benefits," part of an attachment to the appraisers' report that was filed in the trial court.

4. A party may mount a challenge to service or notice by publication via a special appearance and motion to quash and, if the challenge is denied, thereafter defend on the merits and still have the alleged error concerning the denial reviewed on appeal, as long as the party does not request any affirmative relief in the action or proceeding. See *Southard v. Oil Equipment Corp.*, 1956 OK 74, 296 P.2d 780; *First State*

5. Other arguments rejected by the Court of Civil Appeals that were raised by Appellants in an effort to reverse the trial court judgment are 1) error of the trial court in ruling they lacked standing to object to the appraisers' report because timely objections were not filed by them challenging the report, 2) the report was not properly prepared pursuant to applicable statutes, and 3) trial court error in ruling the estimated cost of the conservancy district projects was less than the benefits that would accrue therefrom. In that we reverse the trial court judgment because of the constitutionally deficient notice, no need exists to decide these other issues.

## ANALYSIS

¶ 15 On the notice issue, the COCA relied on three of this Court's prior opinions to support its rejection of the due process challenge mounted by Appellants. The three cases are: *In re Conservancy Dist. No. 5, Lincoln County,* 1970 OK 81, 471 P.2d 879; *Owens v. Tri–County Turkey Creek Conservancy Dist. No. 21,* 1966 OK 173, 418 P.2d 674; and *Bridal v. Cottonwood Creek Conservancy Dist. No. 11, in Logan, Oklahoma, Kingfisher and Canadian Counties,* 1965 OK 105, 405 P.2d 17, *cert. denied* 382 U.S. 943, 86 S.Ct. 400, 15 L.Ed.2d 352 (1965). Put simply, the COCA mistakenly relied on the cases because none of them decided the issue as to whether publication notice alone **at the appraisers' report stage** was sufficient to comply with constitutional procedural due process. All dealt with appeals from judgments/orders entered regarding stages in the conservancy district process **prior to** confirmation of an appraisers' report, a report when approved by a trial court is the anchor upon which the assessments against landowners like Appellants are set and which, if not paid when due, become liens upon their district land. Furthermore, none of the three points the way to a correct disposition of the due process challenge raised by the motions to quash that were filed in the trial court. Instead, other case law from this Court and the United States Supreme Court dealing with procedural due process principles light the path to an appropriate ruling on the motions to quash and a correct resolution of Appellants' appeal.

¶ 16 *Bridal* involved appeals from orders establishing a district, approving a district plan and the letting of contracts. Although *Bridal* rejected an argument that notice at the establishment stage and the plan of improvement stage was required to comply with then existent statutes pertaining to process in civil actions generally (both stages require only notice by publication, § 544 and § 565, respectively), the Court specifically set out that certain issues raised in the appeal concerning the appraisal of benefits and assessment of costs against any land/landowners would **not** be reached, as it would be premature to do so because **no** appraisers'

report had yet been made. The Court said in *Bridal:*

> We are of the opinion that the argument concerning the appraisal of benefits and assessments of costs is now premature, and that the Oklahoma Conservancy Act provides ample means for judicial resolution of such a controversy, if it arises, or reoccurs, after the District's Board of Appraisers has made its report.

*Bridal,* 405 P.2d at 37.

¶ 17 *Owens* was an appeal from a trial court order sustaining a motion to dismiss a motion and amended motion by two landowners to vacate prior trial court judgments establishing the district and approving the official work/improvement plan for the district. Although *Owens* (418 P.2d at 678), relying on *Bridal,* contains a blanket general statement that the entire Conservancy Act "is again declared constitutional," the statement must be read in the *Bridal* context. In other words, the appeal was **not** from an order approving an appraisers' report, the foundation for the monetary assessments, and **no** procedural due process issue concerning publication notice **at the appraisers' report stage** was decided.

¶ 18 The *Lincoln County* case was an appeal from an order establishing the district. Although *Lincoln County,* relying on *Owens,* rejected an argument that notice by publication **at the establishment stage** was insufficient to confer jurisdiction on the trial court, the Court **expressly** declined to consider constitutional challenges to the appraisal of benefits and assessment provisions of the Act **as being premature.** The Court stated:

> Protestants challenge the order establishing the Conservancy District, on asserted constitutional grounds, based on the appraisal of benefits and assessment provisions of the Act, §§ 601–649. **The order establishing the Conservancy District creates no liability or liens and imposes no taxes. To the extent that future orders may impose specific burdens which protestants claim would impair their constitutional rights, the constitutional question asserted will not be considered until, and if, a later order is, in fact,**

entered. **Protestants challenge on these grounds is premature.**

*Lincoln County,* 471 P.2d at 881 (citations omitted) (emphasis added).

■ ¶ 19 Thus, contrary to the COCA's view, none of the three cases it relied on nor any others we have found, has upheld, over a procedural due process challenge, the constitutionality of publication notice alone at the appraisers' report stage. The question as to the sufficiency of the publication notice at that stage has simply **not** been addressed by this Court. But, as can be seen, the issue **is** now squarely before us and ripe for decision at this time. This is so because the judgment appealed by Appellants, one approving the appraisers' report, does now fix a monetary liability against them, a liability that becomes **incontestable** when the report and its appraisals—the underlying basis for assessments against them and their district land—are approved by the trial court. We, therefore, proceed to decide the constitutional question raised by Appellants.

¶ 20 In the Third Syllabus by the Court in *Bomford v. Socony Mobil Oil Co.,* 1968 OK 43, 440 P.2d 713, 715, the following was stated:

The requirements of due process contemplate that, where feasible, notice of legal proceedings be given by means reasonably calculated to inform all parties having legal rights which might be directly and adversely affected thereby, and where the names and addresses of adverse parties are known or are easily ascertainable, notice of pending proceedings by publication service, alone, is not sufficient to satisfy the requirements of due process under the 14th Amendment to the federal Constitution or Art. 2, Sec. 7 of the Oklahoma Constitution.

The United States Supreme Court succinctly stated in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950):

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane,* 339 U.S. at 314, 70 S.Ct. 652 (citations omitted). *Bomford* further stated:

The general rule that emerges from *Mullane* and subsequent cases is simple: A state cannot invest itself with, and exercise through its courts, judicial jurisdiction over a person in a proceeding which may directly and adversely affect his legally protected interests, unless a method of notification is employed which is reasonably calculated to give him knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be given; the notice required will necessarily vary with circumstances and conditions, and in some instances, as in the case of missing or unknown persons, 'personal notice might not be reasonably possible.' **But notice by publication is clearly insufficient with respect to one whose name and address are known or readily ascertainable from sources at hand. In other words, the requirements of due process are not satisfied unless due diligence has been exercised to find the whereabouts of the defendant.**

*Bomford,* 440 P.2d at 718 (citations omitted) (emphasis added).

¶ 21 This Court put it fairly simply in the case of *Cravens v. Corporation Commission,* 1980 OK 73, 613 P.2d 442, *cert. denied,* 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981):

Since the case of *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865, 873 (1950) promulgated standards which must be met before notice or service by publication is effective, this [C]ourt has consistently required due diligence in giving notice of a proceeding to persons whose rights could be adversely affected. In *Bomford v. Socony Mobil Oil Co.,* 440 P.2d 713 (Okl.1968), we stated due process requires this notice to be given by means reasonably calculated to inform all affected parties.

*Cravens,* 613 P.2d at 444. In *Harry R. Carlile Trust v. Cotton Petroleum Corp.,* 1986 OK 16, 732 P.2d 438, *cert. denied,* 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 and 1021, 107 S.Ct. 3265, 97 L.Ed.2d 764 (1987), it was said:

> When a proceeding is likely to affect constitutionally protected property interests, notice to interested parties must be "reasonably calculated, under all circumstances" to apprise them of the pendency of the action and afford them an opportunity timely to interpose their objections. Notice is a fundamental element of due process as well as a jurisdictional requirement. Before jurisdiction may be exercised over a person in proceedings that may directly and adversely affect his legally protected interests, the minimum standards of due process require notice that is calculated to provide knowledge of the proposed exercise of jurisdiction and an opportunity to be heard.

*Harry R. Carlile Trust,* 732 P.2d at 443 n. 25 (citations omitted). The Court further said in *Harry R. Carlile Trust:*

> Publication notice is not reasonably calculated to provide actual knowledge of instituted proceedings. It is hence inadequate as a method to inform those who could be notified by more effective means such as personal service or mailed notice. Mail service is an inexpensive and far more efficient mechanism to enhance the reliability of notice than either publication or posting. When a party's name and address are reasonably ascertainable from sources available at hand, communication by mail or other means certain to insure actual notice is deemed to be *a constitutional prerequisite in every proceeding which affects either a person's liberty or property interests.*

*Harry R. Carlile Trust,* 732 P.2d at 444 (footnotes omitted) (italics in original).

¶ 22 In this case, it is plain to us that significant property interests of Appellants and other landowners identified in the appraisers' report are implicated and stand to be adversely affected through the proceeding culminating with approval of the report. Notwithstanding this, Appellee argues publication notice alone satisfies constitutional due process.

¶ 23 As has already been noted, Appellee does **not** assert that the whereabouts or addresses of Appellants or other like landowners listed in the report are either unknown or not readily available to Appellee from the tax rolls of the counties within the district's boundaries or other reasonably available means. Appellee cites no case from this Court and our independent research has uncovered none that has upheld the constitutional sufficiency of notification by publication alone in a conservancy district case at the critical stage of the process involving the appraisers' report or that would warrant doing so in a situation where the names and addresses of those subject to an assessment based on the report's contents are either known or easily ascertainable. Therefore, notwithstanding the statutory provision for publication notice alone, Appellee was required to use due diligence to notify them of the appraisers' report, the time for filing objections to it and the date for hearing on the report and any objections filed. *See Cravens,* 613 P.2d at 444.

¶ 24 *Harry R. Carlile Trust* put it this way:

> Because resort to publication service is constitutionally permissible *only* when all other means of giving notice are unavailable, we hold today that the face of an administrative proceeding must affirmatively show a diligent but unsuccessful effort to reach the affected party by better process. *In short, courts may not presume publication service alone to be constitutionally valid when the judgment roll or record of an administrative proceeding fails to show that the means of imparting better notice were diligently pursued but proved unavailable.*

*Harry R. Carlile Trust,* 732 P.2d at 444 (footnote omitted) (italics in original). Thus, a holding that publication notice alone was constitutionally sufficient under procedural due process principles could **only** be justified in a situation where a diligent search would **not** produce the addresses of those identified in the appraisers' report as being subject to an assessment upon trial court approval.

Otherwise, publication notice, as the above cases make clear, is a constitutionally insufficient form of notice to apprise them of the appraisers' report and the opportunity to object to it.

¶ 25 To satisfy procedural due process where the names and addresses of those subject to an assessment of the type involved in this case are either known or easily ascertainable, some form of notice other than publication that is reasonably calculated to apprise them of the report and the opportunity to challenge it is necessary to comply with the command of art. 2, § 7 of the Oklahoma Constitution. The trial court, therefore, erred in denying the motions to quash that challenged the publication notice based on that Oklahoma constitutional provision, and the COCA erred in affirming the judgment that approved the appraisers' report.

¶ 26 Accordingly, the trial court judgment is **REVERSED,** the COCA's opinion is **VACATED** and this matter is **REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

¶ 27 WINCHESTER, C.J., EDMONDSON, V.C.J., HARGRAVE, OPALA, KAUGER, WATT, TAYLOR, COLBERT, JJ., Concur.

¶ 28 REIF, J., Disqualified.