2012 OK CIV APP 52

**In the Matter of C.R.G., Deprived Child,**

**State of Oklahoma, Petitioner/Appellee,**

v.

**Derrick Gurley, Respondent/Appellant.**

**No. 109,903.**

Court of Civil Appeals of Oklahoma, Division No. 1.

April 13, 2012.

Laura DeYoung, Osage County District Attorney's Office, Pawnee, Oklahoma, for Petitioner/Appellee.

Patrick M. Pickerill, Pickerill Law Offices, P.C., Cleveland, Oklahoma, for Respondent/Appellant.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Respondent/Appellant Derrick Gurley (Father) appeals the trial court's order adjudicating C.R.G. his minor child, deprived. The child was taken into emergency custody by the Petitioner/Appellee State of Oklahoma (the State) based on suspicion of abuse. C.R.G. was later returned to Father because the State failed to file a petition to adjudicate the child deprived within seven (7) days of the child's removal, in accordance with state law. The State then removed the child from Father's custody for a second time, based on the same allegations of abuse, and filed a petition to initiate deprived proceedings. C.R.G. was adjudicated deprived. On appeal, Father argues that the trial court committed reversible error by allowing the State to reassert the allegations of abuse, by issuing the second emergency custody order, and by denying his motion for return of the child. Father argues he was denied due process because the emergency custody hearing was not held within two (2) judicial days of the child's removal. Father also appeals the trial court's orders granting the State a continuance and adjudicating the child deprived. We hold that the State was permitted to refile the case, Father was not denied due process, the trial court did not abuse its discretion by granting the continuance, and competent evidence supports the deprived status adjudication. We affirm.

¶ 2 C.R.G. was born April 7, 2011. On July 7, 2011, C.R.G. fell or rolled off a bed at his Father's house. Father took C.R.G. to the emergency room in Cushing, Oklahoma. The child was not injured by the fall, but x-rays revealed healing rib fractures. The matter was referred to the Department of Human Services (DHS). Upon DHS's request, the parents took C.R.G. to the Child Abuse Network Justice Center in Tulsa, Oklahoma. There, Dr. Passmore examined C.R.G., reviewed the x-rays, and reviewed x-rays taken of the child May 17, 2011.

¶ 3 DHS filed an affidavit and executed an emergency custody order July 11, 2011. The matter was assigned case number JD–2011–5. The trial court held an emergency custody hearing July 12, 2011 and granted contin-

ued custody to the State. The State did not file a petition to adjudicate the child deprived. On July 20, 2011, Father filed a motion for return of the child based on the State's failure to file a petition. The trial court granted Father's motion, and the child was returned to his Father's custody.

¶4 The next day, DHS filed an affidavit and an order for emergency custody and took C.R.G. into custody based on the same facts. The matter was assigned case number JD–2011–7. The trial court held an emergency custody hearing in the new case July 26, 2011 and granted continued custody to the State. At the emergency custody hearing, Father filed a motion for return of the child and dismissal. The trial court denied the motion. On July 27, 2011, the State filed a petition to adjudicate the child deprived in JD–2011–7.

¶5 The adjudication hearing was held August 4, 2011. Dr. Passmore, the physician who examined C.R.G. at the Justice Center, was not present at the hearing. The State requested a continuance to secure Dr. Passmore's attendance. Although Father objected to the continuance, the trial court continued the hearing until August 22, 2011. At the continued adjudication hearing, Dr. Passmore testified that C.R.G.'s fractured ribs were caused by abuse. The trial court adjudicated C.R.G. deprived August 26, 2011. Father appeals from the trial court's judgment adjudicating C.R.G. deprived in JD–2011–7.

¶6 Father raises several issues on appeal. As a preliminary matter, we note that the State's brief did not respond to six of seven issues raised by Father on appeal.[1] The State merely asserted that Father did not file a timely appeal and, therefore, Father's arguments must fail.[2] The State's understanding of civil appellate procedure is misguided in this case. The trial court filed the Adjudication Order August 26, 2011. This appeal was commenced by Father filing his petition in error with the Clerk of the Supreme Court September 26, 2011. Father filed his petition in error within thirty (30) days of the date of judgment and, therefore, Father's appeal was timely filed as to all issues. *See* Okla.Sup.Ct.R. 1.21.[3] The State has effectively waived its opportunity to respond to six of seven issues raised on appeal.[4] However, because of the serious nature of this proceeding and the importance of the issues raised, the Court of Civil Appeals will review all of the issues, notwithstanding the State's approach.

¶7 First, Father argues that the trial court erred by issuing the second emergency custody order after the child had been returned in Case No. JD–2011–5 and by denying his motion for return of the child and dismissal. Father asserts that the State's allegations in JD–2011–7 were precluded by doctrines of res judicata and collateral estoppel. Father's arguments present questions of law. The Court of Civil Appeals has the plenary, independent and nondeferential authority to reexamine a trial court's legal rulings. *In re C.R.T.*, 2003 OK CIV APP 29, ¶14, 66 P.3d 1004, 1009 (citing *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, ¶5, 932 P.2d 1100, 1103 n. 1).

¶8 Title 10A, § 1–4–205 provides:

1. The State only responds to Father's argument that the trial court erred in adjudicating the child deprived.

2. However, the State did not file a motion to dismiss the appeal because of untimeliness. *See* Okla.Sup.Ct.R. 1.6.

3. The trial court's emergency custody order, order denying Father's motion for return of the child and dismissal, and order granting the continuance were not final appealable orders until judgment was entered August 26, 2011.

4. The State's failure to respond to these issues in its response brief is similar to the situation where the appellee fails to file a response brief. "Where there is an unexcused failure to file an answer brief, this Court is under no duty to search the record for some theory to sustain the trial court judgment; and where the brief in chief is reasonably supportive of the allegations of error, this Court will ordinarily reverse the appealed judgment with appropriate directions." *Cooper v. Cooper*, 1980 OK 128, ¶6, 616 P.2d 1154, 1156; Okla.Sup.Ct.R. 1.10. However, "[r]eversal is never automatic on a party's failure to file an answer brief." *Enochs v. Martin Props., Inc.*, 1997 OK 132, ¶6, 954 P.2d 124, 127. If "the record presented fails to support the error alleged in the [Father's] brief ... the decision to be reviewed cannot be disturbed. It is presumed correct until the contrary is shown by the record." *Id.*

B.1. A petition for a deprived child proceeding shall be filed and a summons issued within seven (7) judicial days from the date the child is taken into custody unless, upon request of the district attorney at the emergency custody hearing, the court determines there are compelling reasons to grant additional time for the filing of the petition for a period of time not to exceed fifteen (15) calendar days from the assumption of custody.

2. If a petition is not filed as required by this subsection, the emergency custody order shall expire. The district attorney shall submit for filing in the court record a written record specifying the reasons why the petition was not filed and specifying to whom the child was released.

10A O.S.Supp.2009 § 1–4–205. In JD–2011–5, C.R.G. was returned to Father July 20, 2011 because the State failed to file a timely petition and the emergency custody order expired. The trial court granted another emergency custody order in JD–2011–7 on July 21, 2011. Father argues that the trial court did not have jurisdiction in JD–2011–7 because it had not fully disposed of the prior case.[5] Father asserts that the trial court was without jurisdiction to issue the second emergency custody order based on the same facts as the emergency custody order in JD–2011–5. Father further argues that because the trial court did not have jurisdiction to take custody of the child, it abused its discretion by denying Father's motion for return of the child and dismissal.[6]

¶ 9 Father does not cite any authority supporting his arguments that the trial court lacked jurisdiction to issue the second emergency custody order. Argument without supporting authority will not be considered on appeal. Okla.Sup.Ct.R. 1.11: *State ex rel.*

*Dep't of Human Servs. v. Baggett*, 1999 OK 68, ¶ 12, 990 P.2d 235, 240 n. 5. Section 1–4–205 does not provide a remedy for the State's failure to file a petition within the statutory time frame, except that the emergency custody order expires. The issue is whether the State can re-file the case based on the same allegations of abuse. There was no judgment on the merits in JD–2011–5. We do not condone the State's noncompliance with the procedures articulated in § 1–4–205.[7] However, the Legislature has not prescribed a remedy. We hold that the State is not prohibited from requesting a second emergency custody order and filing a petition to begin deprived proceedings, if there remains reasonable suspicion that the child needs protection from abuse. The paramount consideration in all proceedings within the Oklahoma Children's Code is the best interests of the child. 10A O.S. § 1–1–102(E). Furthermore, "[n]othing contained in the Oklahoma Children's Code shall prevent a court from immediately assuming custody of a child and ordering whatever action may be necessary, including medical or behavioral health treatment, to protect the child's health, safety, or welfare." 10A O.S. § 1–4–207

¶ 10 Father argues that the State's allegations in JD–2011–7 are precluded by the principles of res judicata and collateral estoppel. Father asserts that the State had the opportunity to try the issues in JD–2011–5 but failed to do so by not filing a petition and, therefore, res judicata and collateral estoppel preclude the State from making the allegations for a second time in JD–2011–7.

¶ 11 "The doctrine of res judicata, or claim preclusion, operates to bar the relitigation of issues by the parties or their privies

---

5. On July 20, 2011, the trial court granted Father's motion for return of the child in JD–2011–5. However, the record is unclear as to whether JD–2011–5 was dismissed.

6. Father also argues that the trial court erred by not requiring the State to comply with 10A O.S. § 1–4–205(B) and file a written record specifying the reasons why a petition was not filed in JD–2011–5 and specifying to whom the child was released. Father appeals from the trial court's adjudication order in JD–2011–7. Issues arising out of JD–2011–5 will not be considered on this

appeal. We simply note that the statute requires the district attorney to make such a filing when the custody order expires and the child is returned to the parent(s).

7. By not filing a petition within seven (7) days of the child's removal, the child was returned to Father's custody for one (1) day before the State executed the second emergency custody order and removed the child again. Had the State filed a timely petition in the original case, the child would not have gone between the Father and the State's custody.

which were or could have been litigated in an action which resulted in a final judgment on the merits." *Carris v. John R. Thomas & Assoc., P.C.,* 1995 OK 33, ¶ 9, 896 P.2d 522, 527 (footnote omitted). "The doctrine of collateral estoppel, or issue preclusion, is activated when an ultimate issue has been determined by a valid and final judgment—that question cannot be relitigated by parties, or their privies, to the prior adjudication in any future lawsuit." *Id.* (footnote omitted).

¶ 12 We hold that neither res judicata nor collateral estoppel prohibited the State from filing JD–2011–7. In order for res judicata or collateral estoppel to apply, there must be a final judgment on the merits. C.R.G. was returned to Father in JD–2011–5 because the State did not file a petition to initiate the deprived proceedings within seven (7) days of removing the child from Father's custody and the emergency custody order expired. There was no final judgment on the merits in JD–2011–5. The child's status was not adjudicated as deprived or not deprived in JD–2011–5. Therefore, the trial court did not violate principles of res judicata or collateral estoppel by granting the second emergency custody order and denying Father's motion for return of the child in JD–2011–7.

¶ 13 The next issue raised on appeal is whether the trial court abused its discretion and violated Father's right to due process by not holding the emergency custody hearing in JD–2011–7 within two (2) judicial days of removing the child from Father's custody. Questions as to whether procedural due process rights have been violated are subject to a *de novo* review standard. *In re Turkey Creek Conservancy Dist.,* 2008 OK 8,

¶ 3, 177 P.3d 558, 559 (citing *In re A.M.,* 2000 OK 82, ¶ 6, 13 P.3d 484, 486–87).

¶ 14 Again, Father does not cite any authority supporting his argument that his due process rights were violated by holding the emergency custody on the third judicial day after removal. Title 10A, § 1–4–203(A) provides that "[w]ithin the next two (2) judicial days following the child being taken into protective or emergency custody, the court shall conduct an emergency custody hearing."[8] C.R.G. was removed Thursday, July 21, 2011, and the emergency custody hearing was held Tuesday, July 26.2011. Father asserts that it was an abuse of discretion to hold the hearing after Monday, July 25, 2011. Father argues that the statutory time frame is mandatory, and the purpose of the act is ignored if the procedures are followed arbitrarily.

¶ 15 Mandatory language is used in the statute. It is clear that the Legislature intended the hearing to be held speedily after a child is removed from his or her home. We disagree with the State's argument that "two judicial days" has connection to the availability of a judge, as opposed to the more rational interpretation of when the court clerk's office is open for business.

¶ 16 The emergency custody hearing was held three judicial days after the child was taken into State custody. Having the emergency hearing on the third day violated § 1–4–203. The statutory provisions relevant to the emergency custody hearing do not suggest a remedy for failing to hold the emergency custody hearing within two (2) judicial days of the child's removal. However, § 1–4–601 explains that if the trial court does not hold the *adjudication hearing* within the time frame prescribed by statute, the trial court still retains jurisdiction in the matter.[9]

---

**8.** "Within the next two (2) judicial days following the child being taken into protective or emergency custody, the court shall conduct an emergency custody hearing to determine whether evidence or facts exist that are sufficient to demonstrate to the court there is reason to believe the child is in need of protection due to abuse or neglect, or is in surroundings that are such as to endanger the health, safety or welfare of the child." 10A O.S. § 1–4–202(B)(1).

**9.** Title 10A, § 1–4–601 sets forth procedures for the adjudication hearing. According to the stat-

ute, the adjudication hearing "shall be held not more than ninety (90) calendar days following the filing of the petition." 10A O.S. § 1–4–601(A). However, if the adjudication hearing is delayed more than one-hundred eighty (180) days after the child was removed, the emergency custody order expires. *Id.* § 1–4–601(B)(2). Subsection (c) provides:

The release of a child from emergency custody due to the failure of an adjudication hearing being held within the time frame prescribed by this section shall not deprive the court of juris-

There is not a similar provision discussing the consequences for failing to hold the emergency custody hearing within two (2) judicial days of removing the child. Again, we do not condone the procedural lapse by the State and the trial court in this case. The mandatory procedures established by the Legislature should be followed. However, Father failed to demonstrate that he was prejudiced by the one day delay of the emergency custody hearing. We hold that the one day delay did not constitute reversible error in this case.

 ¶ 17 Father next argues that the trial court abused its discretion by granting the State's request for a continuance of the adjudication hearing. "The granting of a continuance is within the sound discretion of the trial court, and the refusal to grant a continuance does not constitute reversible error unless abuse of discretion is shown." *Bookout v. Great Plains Reg'l Med. Ctr.,* 1997 OK 38, ¶ 10, 939 P.2d 1131, 1134 (footnote omitted).

¶ 18 The adjudication hearing was held August 4, 2011. The State called three witnesses and then requested a continuance because Dr. Passmore, the physician who examined C.R.G. at the Justice Center, was not present to testify.[10] The trial court granted the continuance over Father's objection. Father further objected to the admission of evidence resulting from the continuance, *i.e.,* Dr. Passmore's testimony. The adjudication hearing was continued to August 22, 2011.

¶ 19 We hold that the trial court did not abuse its discretion by granting the continuance. At the August 4, 2011 hearing, the State made an offer of proof that if the hearing was continued to allow for Dr. Passmore's testimony, Dr. Passmore would testify that the child's injuries were caused by abuse. In *Saul v. Alcorn,* the Supreme Court of Oklahoma recognized:

> diction over the child and the parties or authority to enter temporary orders the court deems necessary to provide for the health, safety, and welfare of the child pending the hearing on the petition.

*Id.* § 1–4–601(c). Thus, rather than exposing the child to multiple home extractions, the State

Courts have a duty to guard with jealous care the interests of minors and to protect infants' rights. The state also has an interest in a child's welfare and a responsibility to protect a child's interest. Under the Oklahoma Children's Code, the paramount consideration in all proceedings concerning a child alleged or found to be deprived is the health, safety and best interests of the child.

2007 OK 90, ¶ 12, 176 P.3d 346, 351; *see* 10A O.S. § 1–1–102(E). It was within the trial court's discretion to grant a continuance and provide the State an opportunity to introduce evidence of abuse.

 ¶ 20 Finally, Father appeals the trial court's order adjudicating C.R.G. deprived. Father argues that the State's evidence did not make a causal connection between the child's rib fractures and the action or inaction of Father. The burden of proof is on the State to demonstrate the factual basis for the deprived status adjudication by a preponderance of the evidence. 10A O.S. § 1–4–603(A). On appeal from an order declaring a child deprived, we will affirm the trial court's findings if they are supported by competent evidence. *In re J.D.H.,* 2006 OK 5, ¶ 4, 130 P.3d 245, 247.

¶ 21 The State argues that Dr. Passmore's August 22, 2011 testimony supported the trial court's adjudication. X-rays taken May 17, 2011, when the child was being treated for pneumonia, showed no fractured ribs. X-rays taken July 7, 2011 revealed healing fractured ribs. Dr. Passmore testified that the fractures were not seen within normal limits of childhood activity for the child's age and explained that this type of non-accidental trauma to the ribs may be caused by squeezing or direct impact. Dr. Passmore opined that C.R.G.'s rib bone fractures were caused by abuse. Father did not present a defense or provide an explanation for the child's rib injuries. We hold that the trial court's order

could have proceeded with a deprived petition even after the return of the child to the parents.

10. The record reflects that Dr. Passmore was subpoenaed by the State. The subpoena was defective, but there was no evidence Dr. Passmore failed to appear due to the defect.

adjudicating C.R.G. deprived was supported by competent evidence.

¶ 22 AFFIRMED.

JOPLIN, V.C.J., and MITCHELL, J. (sitting by designation), concur.